# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD K. WASHBURN,<br><br>Defendant. | Case No. CR11-0100<br><br>ORDER FOR RELEASE |

On the 1st day of June, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Matthew J. Cole. The Defendant appeared personally and was represented by his attorney, Jane Kelly.

## I. RELEVANT FACTS AND PROCEEDINGS

On May 17, 2011, Defendant Donald K. Washburn was charged by Indictment (docket number 2) with wire fraud (Counts 1-10), money laundering (Counts 11-13), and making false statements to the United States Probation Office (Counts 14-22). At the initial appearance and arraignment on May 27, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on July 25, 2011. Also at the initial appearance, the Government advised the Court that it "is seeking detention." A detention hearing was scheduled for June 1.

At the hearing, FBI Special Agent Shauntay Lett testified regarding the circumstances underlying the instant charges. Beginning in 2009, Defendant allegedly entered into multiple schemes to defraud and/or obtain large sums of money by false and fraudulent means from various individuals. In an affidavit, Lett details the various

1

schemes involving Defendant's alleged mining operations.¹ Defendant's schemes involved financial transactions by means of wire transfer.

From March 9, 2007 to March 8, 2010, Defendant was under the supervision of the United States Probation Office ("USPO") for the Northern District of Iowa.² As a condition of his supervised release, Defendant was required to submit a monthly supervision report to the USPO, including information regarding his employment, bank accounts, income, expenditures, and financial transactions. Agent Lett testified that Defendant repeatedly failed to report information regarding certain bank accounts and financial transactions on his monthly supervision report.

According to the pretrial services report, Defendant is 61 years old. He has been married to Dolores Washburn for 36 years. They have four adult children and one 14 year old daughter. Defendant has lived most of his life in Cedar Rapids, Iowa.

Defendant advised the pretrial services officer that for the past four years, he has been employed at Washburn Wall Systems, a business owned by one of his children.³ Defendant told the pretrial services officer that he is also self-employed "selling oil wells on commission." In fact, Defendant claims that he expects to earn $3.5 million in the near future as commission from selling several oil wells. Defendant also claims that he owns a gold mine in Colorado, called "Cumberland Mines," toward which $820,000 is currently held in escrow.

Defendant reported that he suffers from peripheral artery disease, heart problems, and diabetes. Defendant told the pretrial services officer that he takes several medications for his physical health problems. At the time of his arrest, however, Defendant told

---

¹ *See* Affidavit of Shauntay Lett; Government's Exhibit 1.

² Defendant's supervision stemmed from a 2005 conviction of multiple counts of wire fraud and money laundering.

³ According to some of his monthly United States Probation Office reports, he was employed by Polar Insulation, a business owned by his son. *See* Government's Exhibits 2-9.

2

Special Agent Lett that he was not taking any medication. Defendant reported no past or present mental health or emotional concerns. Defendant also denies ever abusing alcohol or using controlled substances.[4]

On February 1, 1973, when he was 23 years old, Defendant was charged and later convicted of multiple counts of counterfeiting federal reserve notes and selling counterfeited federal reserve notes. He was sentenced to 1 year in federal prison and 2 years probation. His probation was discharged in July 1976. On February 1, 2003, Defendant was charged and later convicted of assault causing bodily injury. On October 29, 2003, Defendant was charged and later convicted of multiple counts of wire fraud and money laundering.[5] On May 16, 2005, he was sentenced to 27 months in prison and 3 years of supervised release. Defendant was discharged from supervised release on March 8, 2010. The majority of the conduct alleged in Counts 1 through 13 of the instant Indictment, and the entirety of the conduct alleged in Counts 14 through 22 of the instant Indictment occurred while Defendant was on supervised release.

At the conclusion of the detention hearing, the Court found that the Government had proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released prior to trial. *See* 18 U.S.C. § 3142(e)(1). That is, the Court concluded that while Defendant's release would not impact the "physical" safety of the community, his release would constitute a

---

[4] Interestingly, according to the pretrial services report, Defendant participated in a 500 hour residential drug program while he was incarcerated in 2005 and 2006.

[5] On October 29, 2003, Defendant was placed on pretrial release. On July 9, 2004, Defendant's pretrial release was revoked. According to the pretrial services report, Defendant's pretrial release was revoked because he made false statements in a motion to continue trial. Specifically, Defendant claimed that one of his witnesses was unavailable because he was hospitalized following a car accident in Dubai. FBI agents contacted the witness in Bethesda, Maryland, and learned that he was not involved in a car accident, and had not been to Dubai for several years. Defendant's pretrial release was reinstated on September 13, 2004.

danger to the "economic" safety of the community.[6] Accordingly, the Court concluded that Defendant should be detained pending the trial.

In ordering Defendant's detention, however, the Court neglected to address the threshold issue of whether the Government had met its preliminary obligation to prove by a preponderance of the evidence that it was entitled to a hearing under section 3142(f). After reviewing that issue, the Court now concludes that the Government failed to meet its burden on the threshold question and, therefore, Defendant's release is required.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the defendant has been charged with an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will

---

[6] There is "ample authority" for the position that in considering the "safety" of the community, as set forth in section 3142(e)(1), the Court may consider the economic safety to the community, as well as the physical safety of the community. *United States v. Jinwright*, 2010 WL 2926084 (W.D.N.C.) at *2 (collecting cases).

4

reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors," such as a risk of flight, or a risk that the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2).

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e)(1). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with wire fraud, money laundering, and making false statements to the United States Probation Office. Initially, the Court must determine whether a detention hearing is authorized. *United States v. Ploof*, 851 F.2d 7, 10 (1st Cir. 1988) ("[section] 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the following instances [identified in section 3142(f)]"). Here, the Government concedes that the charges brought in the Indictment are not offenses identified in section 3142(f)(1)(A-E). Furthermore, the Government concedes that Defendant does not pose a serious risk of flight, as required in section 3142(f)(2)(A). Rather, the Government asserts that a detention hearing is authorized pursuant to the seventh alternative found in section 3142(f). That is, the Government argues that there is "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *See* 18 U.S.C. § 3142(f)(2)(B).

In support of its argument, the Government points to the testimony of Special Agent Michael Kitsmiller of the Federal Bureau of Investigation. Kitsmiller testified that he was the case agent when Defendant was convicted of wire fraud and money laundering in 2005. According to Kitsmiller, Defendant received a sentencing enhancement due to his "obstruction of justice." Kitsmiller did not provide any detail in that regard, however, and did not testify why Defendant may be considered a serious risk to obstruct justice if released at this time.

The Government does not argue that there is a serious risk that Defendant will "threaten, injure, or intimidate" prospective witnesses or jurors. Rather, the Government asserts that there is a serious risk that Defendant "will obstruct or attempt to obstruct justice." The Court concludes that the evidence produced at the time of hearing fails to establish by a preponderance of the evidence that if Defendant is released prior to trial, that

there is a "serious risk" that he will "obstruct or attempt to obstruct justice."[7] Accordingly, the Court finds that the threshold showing for a detention hearing, as required by § 3142(f), has not been met. The Court erred by failing to address the issue at the time of hearing, and proceeding instead to the second question of whether or not any condition or combination of conditions will reasonably assure the safety of the community. Even though the Court believes that there is no condition or combination of conditions which will reasonably assure the economic safety of the community, "the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated in 18 U.S.C. § 3142(f)(1)." *United States v. Madoff*, 586 F. Supp. 2d 240, 250-51 (S.D.N.Y. 2009) (quoting *Friedman*, 837 F.2d at 49). Therefore, the Court finds that Defendant must be released on conditions pending the trial.

### III. ORDER

IT IS THEREFORE ORDERED that the Government's oral motion to detain Defendant pending the trial is **DENIED**. The Defendant will be released pursuant to a separate Order setting conditions of release.

The time from the Government's oral motion to detain (May 27, 2011) to the filing of this Ruling (June 2, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 2nd day of June, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[7] Following the hearing, the Court advised both counsel that it had neglected to address the threshold question of whether a detention hearing was authorized. At that time, counsel for the Government requested that it be permitted to supplement the record regarding its allegation that there is a serious risk that Defendant will obstruct or attempt to obstruct justice. The Court concludes, however, that the Government should not be given "two bites at the apple." Presumably, the Government knew at the detention hearing of its burden in this regard.

7